# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **TOMMIE LEE HARRIS, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **No. 07 C 3552** |
| ) | |
| ) | |
| **OSI FINANCIAL SERVICES, INC., *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Tommie Lee Harris' ("Tommie"),
Plaintiff Louise Harris' ("Louise"), Plaintiff Jeffrey Harris' ("Jeffrey"), and Plaintiff
Donna Harris' ("Donna") motion for partial summary judgment. This matter is also
before the court on Defendant Bank of New York's ("BONY") motion for summary
judgment. For the reasons stated below, we grant in part and deny in part Plaintiffs'
motion for partial summary judgment and we grant BONY's motion for summary
judgment.

## BACKGROUND

Plaintiffs allege that Tommie and Louise are a retired couple who own a home in Chicago, Illinois ("Residence"). Plaintiffs allege that Jeffrey and Donna are the adult children of Tommie and Louise and that Jeffrey and Donna also have an ownership interest in the Residence. Plaintiffs claim that they were the victims of a scheme by Defendant Mark Diamond ("M. Diamond") and his company OSI Financial Services, Inc. ("OSI") to broker high-cost mortgages for home repair loans in order to finance shoddy home repair work that would be performed by Defendant United Construction of America, Inc. ("United") which, unbeknownst to Plaintiffs, was owned by M. Diamond's brother, Defendant Terry Diamond ("T. Diamond").

Plaintiffs allege that M. Diamond arranged for two separate loans on Plaintiffs' behalf from Defendant Encore Credit Corp. (which has since changed its name to Performance Credit Corporation) ("Encore"). First, on June 30, 2004, Tommie, Louise, and Jeffrey (collectively referred to as "Original Borrowers") allegedly closed on a $354,000 mortgage loan from Encore ("2004 Loan"). Plaintiffs allege that on the date of the closing for the 2004 Loan, no loan documents were provided to the Original Borrowers, including disclosure statements or Notice of Right to Cancel ("NORTC") forms. Plaintiffs claim that an NORTC form was later provided to them, but that it was the wrong form which did not fully and accurately disclose the Original Borrowers' right to rescind the 2004 Loan. Second, on January 7, 2005, the Original Borrowers, along with Donna, allegedly closed on another mortgage loan through Encore in the amount of $500,000 ("2005 Loan"). Plaintiffs

claim that the 2005 Loan was necessitated by the fact that T. Diamond and United had stopped in the middle of renovations to the Residence and had demanded more money. The 2005 Loan allegedly went to pay off the 2004 Loan and the additional amount was to be used to complete the renovations. Plaintiffs allege that, with respect to the 2005 Loan, they were provided with incorrect NORTC forms that did not fully and accurately disclose Plaintiffs' right to cancel the 2005 Loan.

Plaintiffs brought the instant action and include in their corrected second amended complaint Truth in Lending Act, 15 U.S.C. 1601, *et seq.* ("TILA") claims brought against Encore, Defendant Mortgage Electronic Registration Systems, Inc, Defendant HSBC Bank, USA, as Trustee for Friedman, Billings, Ramsey Group, Inc. ("HSBC"), and BONY (Count I), Credit Repair Organization Act, 15 U.S.C. § 1679g, *et seq.*, claims brought against M. Diamond and OSI (Count II), breach of fiduciary duty claims brought against OSI, M. Diamond, and Defendant Lawyers' Title Insurance Corporation ("LTIC") (Count III), breach of contract claims brought against M. Diamond, T. Diamond, OSI and United (collectively referred to as "Diamond Defendants") (Count IV), Illinois Consumer Fraud Act, 815 ILCS 505/2, *et seq.*, claims brought against the Diamond Defendants (Count V), common law fraud claims brought against the Diamond Defendants (Count VI), common law civil conspiracy claims brought against the Diamond Defendants (Count VII), race discrimination claims under 42 U.S.C. § 1981 ("Section 1981") brought against the Diamond Defendants and Encore (Count VIII), Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, claims brought against the Diamond Defendants and Encore (Count IX), and

Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*., claims brought against the Diamond Defendants and Encore (Count X).

Plaintiffs subsequently filed a stipulation to dismiss the Diamond Defendants and the court also granted Plaintiffs' oral motion to dismiss LTIC without prejudice. Plaintiffs filed a motion for partial summary judgment on the TILA claims in Count I. BONY, which is only named in Count I, has also moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

The instant motions before the court only implicate Plaintiffs' claims under TILA for rescission of the 2004 Loan and the 2005 Loan and for damages under TILA. The issue before the court is whether the NORTC documents provided to Plaintiffs in connection with both loans provided Plaintiffs with sufficient notice of their rights to cancel the loans and, if not, whether Plaintiffs timely elected to rescind the two loans.

The relevant provision of TILA in this case is 15 U.S.C. § 1635 ("Section 1635"), which provides certain borrowers with a three-day "cooling off" period after a loan transaction is completed, during which time such borrowers have a right to rescind certain loan transactions. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008); 15 U.S.C. § 1635(a). TILA provides that, in the event that a borrower does timely elect to rescind a loan, the creditor has an obligation, within 20 days, to "return to the obligor any money or property given as earnest money, downpayment, or otherwise, and . . . take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). The borrower's right of rescission "encompasses a right to return to the status quo that existed before the loan." *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 766 (7th Cir. 2006). A creditor's failure to honor a valid rescission request made pursuant to Section 1635 can subject that creditor to actual and statutory damages as enumerated in TILA. *See* 15 U.S.C. § 1640(a)(stating that "any creditor who fails to comply with any requirement imposed under . . . section 1635, . . . is liable to such person . . ." for statutory damages, including "the costs of the action, together with a reasonable attorney's fee as determined by the court")

Section 1635 also requires creditors to "clearly and conspicuously disclose" to the borrower the borrower's rescission rights under TILA. 15 U.S.C. § 1635(a). In the event that a creditor fails to adequately inform the borrower of the precise rescission rights available, the period in which the borrower is entitled to rescind the

loan extends until the creditor does provide all proper disclosures and adequate
notice of the right to rescind the loan or for three years from the date of the
completion of the loan transaction, whichever is sooner. *Andrews*, 545 F.3d at 573;
15 U.S.C. § 1635(a), (f).

A borrower's right of rescission varies depending on the type of transaction at
issue. In a first-time loan transaction between a borrower and creditor, the borrower
is free under Section 1635 to rescind the entire amount of the loan. 12 C.F.R. §
226.23(a)(1); 15 U.S.C. § 1635(a). This right to rescind the entire amount of the loan
applies even in a case where the borrower is seeking a loan to refinance an existing
loan from a different prior creditor. 12 C.F.R. § 226.23(a)(1). However, an
exception exists where a borrower is seeking a second loan from the same creditor in
an amount that exceeds a previous loan from that same creditor ("Modification
Exemption"). 12 C.F.R. § 226.23(f)(2). In the case of a refinancing with an existing
creditor, the Modification Exemption acts to limit the borrower's right to rescind
only to the value of the difference between the first and second loans, along with
certain costs associated with the second loan. *Id.*; *Handy*, 464 F.3d at 762-63.

In an effort to curtail any confusion to consumers potentially caused by these
differing rights of rescission, the Federal Reserve Board ("FRB"), which is the
agency responsible for implementing the provisions of TILA, has created model
NORTC forms which contain all of the necessary disclosures for each type of loan
transaction. *Handy*, 464 F.3d at 763; 12 C.F.R. § 226.23(b)(2)(stating that creditors

must either supply the proper model form or else supply some other form that provides "substantially similar notice"). The model NORTC form that applies to ordinary transactions involving first-time creditors is known as the FRB Rescission Model Form H-8 ("H-8 Form"). 12 C.F.R. § 226 Appx. H-8. The H-8 Form notifies borrowers of their right to rescind the entire amount of the loan. *Id.* The model NORTC form that applies to loans that are subject to the Modification Exemption is known as the FRB Rescission Model Form H-9 ("H-9 Form"). 12 C.F.R. § 226 Appx. H-9. The H-9 Form notifies borrowers that the right of rescission applies only to the value of the difference between the first and second loans, along with certain costs associated with the second loan. *Id.*

I. Plaintiffs' Motion for Partial Summary Judgment

In their motion for partial summary judgment, Plaintiffs contend that the undisputed facts establish that Encore violated TILA when it provided incorrect NORTC forms to Plaintiffs with respect to both the 2004 Loan and the 2005 Loan. The undisputed facts establish that, in connection with the 2004 Loan, Encore provided the Original Borrowers with an NORTC form that is identical to the H-9 Form. (HSBC R Pl. SF Par. 39, 41, 43-44); (Enc. R. Pl. SF 1). As indicated above, the H-9 Form applies to Modification Exemption loans and notifies borrowers that they are only entitled to rescind the difference between the second loan and the first loan with the same creditor. 12 C.F.R. § 226 Appx. H-9. The undisputed facts also

establish that, in connection with the 2005 Loan, Encore provided Plaintiffs with an NORTC form that is substantially identical to the H-8 Form. (HSBC R Pl. SMF Par. 71-72); (Enc. R. Pl. SF 1). As indicated above, the H-8 Form applies to first-time loans between a given borrower and a given lender, and the H-8 Form indicates that the borrower has the right to rescind the entire amount of the loan. 12 C.F.R. § 226 Appx. H-8.

Plaintiffs argue that, with respect to both loans, Encore provided them with the incorrect form and Plaintiffs were, thus, never appropriately notified of their TILA rescission rights. Plaintiffs further argue that, since the instant action seeking rescission was filed less than three years from the dates of the closings of both loans and the undisputed facts establish that no Defendant has effectuated a rescission of either loan, Plaintiffs are entitled to rescission and statutory damages under TILA.

Encore, HSBC, and BONY have each filed briefs in opposition to Plaintiffs' motion for partial summary judgment and have argued that the NORTC forms provided to Plaintiffs were either correct or sufficient to provide notice of rescission under TILA. Encore and BONY have also raised the argument that, even if TILA violations occurred, Plaintiffs never timely and properly elected to rescind the loans in the manner prescribed by TILA.

A. The 2004 Loan

Plaintiffs dispute with Encore the issue of whether the provision of the H-9

Form in connection with the 2004 Loan failed to adequately inform the Original Borrowers of their right to rescind the 2004 Loan. Encore admits with respect to the 2004 Loan that it did provide the wrong form. (Enc. R. Pl. SF 1). It is undisputed that the Original Borrowers were financing for the first time with Encore as the creditor. (Enc. R. Pl. SF 1). Therefore, the H-8 Form, which would have informed them of their right to rescind the entire amount of the 2004 Loan would have been the appropriate form. 12 C.F.R. § 226 Appx. H-8. The NORTC form that was provided to them, the H-9 Form, incorrectly indicated that the Modification Exemption applied and that the Original Borrowers could only rescind the difference between the 2004 Loan and a prior existing loan. (Enc. R. Pl. SF 1); 12 C.F.R. § 226 Appx. H-9. Notwithstanding this fact, Encore argues that the H-9 Form did "clearly and conspicuously disclose" the necessary elements of the Original Borrowers' rights to rescind. 15 U.S.C. § 1635(a).

Pursuant to the regulations adopted by the FRB for enforcing TILA (referred to as "Regulation Z"), there are five essential elements of which a consumer must be notified with respect to the consumer's right to rescind. 12 C.F.R. § 226.23(b). These elements are:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission. . . .

(v) The date the rescission period expires.

*Id.*  Encore argues that the H-9 Form met all of the requirements for providing notice, as set out in Regulation Z.  Encore notes that the only statement in the H-9 Form that did not apply to the Original Borrowers was the statement that the transaction was to "increase the amount of credit previously provided to [them]."  12 C.F.R. § 226 Appx. H-9.  Encore argues that this was an accurate statement, since the Original Borrowers were refinancing a previously existing loan, albeit through a different creditor.  Encore argues that there is existing precedent outside of the Seventh Circuit supporting the argument that an NORTC form need not be "'perfect'" so long as it adequately discloses rescission rights.  (Enc. Ans. P SJ Mot. 13)(quoting *McKenna v. First Horizon Home Loan Corp.*, 537 F. Supp. 2d 284, 290 (D. Mass. 2008)).  Encore argues that, with respect to the 2004 Loan, the H-9 Form, although not the perfect form, did comply with TILA's requirements for notification of rescission rights.

Plaintiffs disagree with Encore's argument that the H-9 Form provided the Original Borrowers with adequate notice of their rights to rescind the 2004 Loan under TILA.  Plaintiffs argue that there are meaningful distinctions between the H-9 Form and the H-8 Form and that creditors must provide the correct form in order to give clear and conspicuous notice of rescission rights.  Plaintiffs rely on the Seventh Circuit decision in *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006), where the Court found that a lender that provided both an H-8 Form and an H-9 Form to borrowers failed to "clearly and conspicuously" disclose rescission rights to

the borrower. *Id.* at 763. Plaintiffs argue that in *Handy*, the Seventh Circuit

implicitly recognized an essential distinction between the H-8 Form and the H-9

Form that would make the provision of the wrong form a violation of TILA. *Id.*

We agree with Plaintiffs that Encore's admitted provision of the wrong

NORTC form was a violation of TILA and that, based on the undisputed facts, the

Original Borrowers were not provided with adequate notice of their rescission rights

with respect to the 2004 Loan. Encore's attempted distinction of the facts in *Handy*

is unpersuasive. Although *Handy* involved a slightly different scenario where the

creditor provided both an H-8 and an H-9 Form to the borrower, *Id.*, its holding is

equally applicable to the instant action where the creditor provided only the wrong

form. In fact, an argument can be made that the notice provided in this case was

even less sufficient than the notice provided in *Handy* since none of the forms

provided to the Original Borrowers notified them of their complete right to rescind

the entire amount of the 2004 Loan and the only NORTC form provided to the

Original Borrowers in this case incorrectly suggested that the Modification

Exemption was applicable. 12 C.F.R. § 226 Appx. H-9.

We agree with Plaintiffs that an ordinary consumer could have read the H-9

Form to suggest that there was not a complete right to rescind the entire amount of

the loan. Given the potential erroneous implication of the H-9 Form, we find that the

provision of that form could not have adequately notified the Original Borrowers of

their rights to rescind the 2004 Loan. In reaching this conclusion, we are also

mindful of the Seventh Circuit's repeated assertion that TILA is intended to be read strictly and that "hypertechnicality reigns" when considering a creditor's conformity with TILA. *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995); *Handy*, 464 F.3d at 764 (stating that "TILA does not easily forgive 'technical' errors'"). In keeping with TILA's stated purpose of "assur[ing] *meaningful* disclosure of credit terms," 15 U.S.C. § 1601(a)(emphasis added), we find that in this case the provision of the incorrect model NORTC form to the Original Borrowers in the 2004 Loan was a violation of TILA.

### B. The 2005 Loan

There is no factual dispute between the parties that, in connection with the 2005 Loan, Encore provided to Plaintiffs only copies of the H-8 Form. Plaintiffs dispute with Encore and HSBC whether the provision of the H-8 Form by Encore to Plaintiffs in connection with the 2005 Loan was incorrect and insufficient to provide proper notice of Plaintiffs' rights to rescind the 2005 Loan.

### 1. Encore's Status As a Creditor

Encore and HSBC claim that since the majority of the interest in the 2004 Loan was owned by another creditor at the time of the 2005 Loan, the Modification Exemption did not apply and the 2005 Loan fell into the category of an ordinary first-time loan between a new borrower and a new creditor. The language of the

Modification Exemption in Regulation Z states that the exemption applies to "[a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling." 12. C.F.R. § 226.23(f)(2). The issue before the court is whether an original creditor which originated a loan but which has since assigned its interest in the loan is still considered to be a creditor for the purposes of the application of the Modification Exemption on a subsequent loan.

Neither party has pointed to any legal authority establishing what a borrower's specific rights of rescission would be in such a case. Plaintiffs have, however, pointed to the language in Regulation Z and the official commentary on Regulation Z, promulgated by the FRB, to support their contention that the original creditor maintains its status as creditor even after assigning its interest in the loan. (P. Reply 4-5). For example, Plaintiffs point out that TILA defines a "creditor" as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness. . . ." 15 U.S.C. § 1602(f). Plaintiffs correctly note that there is no provision in TILA indicating that a creditor relinquishes its creditor status after it assigns its interest in the loan to a third party. Plaintiffs also cite Comment 23(f)-4 to Regulation Z which "clarifies that [the Modification Exemption] exempts from the right of rescission refinancings by *original creditors* - to whom a written agreement was originally payable." 60 Fed. Reg. 16771, 776 (April 3, 1995)(emphasis added). This language supports Plaintiffs' contention that the FRB intended the Modification Exemption to apply to original

creditors even in situations where the original creditor has assigned its interest in the loan to a third party.

We recognize that Plaintiffs' interpretation of the Modification Exemption may, in fact, diminish consumer rights under TILA. For example, under Plaintiffs' reading, a borrower could take out a first loan with a creditor that subsequently assigns its interest in the loan to a third party. If, after paying only interest on the first loan and leaving the principal unchanged, the borrower returns to the original creditor to refinance the first loan in the exact same amount, the original creditor could rely on its status as the original creditor on the borrower's first loan to successfully argue that it is completely exempt from any rescission request under the Modification Exemption, notwithstanding the fact that the original creditor no longer had any legal right to collect on the first loan. Plaintiffs, however, point to FRB commentary indicating that the FRB has considered such "anomalous" results and nonetheless has promulgated Regulation Z with the following commentary which states:

> In certain circumstances the application of this rule may produce an anomalous result. Nevertheless, this interpretation is required by [15 U.S.C. § 1602(f)] and [12 C.F.R. §] 226.2(a)(17) [], which define 'creditor' as '. . .the person to whom the debt arising from the consumer credit transaction is initially payable. . . .'"

*Id.* (quoting in part 15 U.S.C. § 1602(f) and 12 C.F.R. § 226.2(a)(17)).

Based on the language in TILA and the FRB's commentary on Regulation Z,

we agree with Plaintiffs that Encore was still a creditor with respect to the 2004 Loan

at the time that Plaintiffs and Encore agreed to refinance via the 2005 Loan.  *See*

*Hamm v. Ameriquest Mort. Co.*, 506 F.3d 525, 528 (7th Cir. 2007)(stating that the

courts should "defer[] to the views of the FRB, as expressed in the Commentary").

Encore falls under the definition of a "creditor" as it is plainly defined by TILA and

Encore and HSBC have pointed to no authority to indicate that Encore was no longer

a creditor.  15 U.S.C. § 1602(f).  As such, we find that the "same creditor" clause in

the Modification Exemption applies to Encore with respect to the 2005 Loan.  12

C.F.R. § 226.23(f)(2).


## 2. Whether Plaintiffs Constituted the Same Consumers as the 2004 Loan

Encore and HSBC argue that even if Encore is considered to have been an

existing creditor at the time of the 2005 Loan, the Modification Exemption still did

not apply since Plaintiffs constituted a new group of consumers.  It is undisputed that

Donna, who was not a party to the 2004 Loan, joined the Original Borrowers as an

obligor on the 2005 Loan.  (P SF Par. 54).  Encore and HSBC assert that the addition

of Donna transformed Plaintiffs into a new "consumer" which nullified the

application of the Modification Exemption.  12 C.F.R. § 226.23(f)(2).  Plaintiffs

argue that Encore's and HSBC's interpretation of the term "consumer" in the

Modification Exemption provision constitutes a "verbal sleight of hand" that seeks to

distract from the fact that the 2005 Loan was clearly a refinancing of the 2004 Loan

by an existing creditor.  (P. Reply 8).

Once again, no party has cited to legal authority establishing whether the addition of one borrower to an existing group of borrowers would destroy the application of the Modification Exemption and make a new loan subject to full rescission rights.  Plaintiffs argue that the 2005 Loan did constitute the refinancing of a preexisting loan issued by the same creditor, Encore.   Plaintiffs correctly point out that the 2004 Loan was completely satisfied and replaced by the 2005 Loan and, although Donna joined the Original Borrowers as an obligor on the 2005 Loan, the parties remained substantially the same.

We agree with Plaintiffs that the 2005 Loan constituted the refinancing of the 2004 Loan, both in letter and in spirit.  We also agree with Plaintiffs that, at the very least, three of the four consumers involved in the 2005 Loan maintained a limited right to rescind the 2005 Loan only to the extent that the 2005 Loan exceeded the value of the 2004 Loan.  The undisputed facts establish that none of the Plaintiffs received any notice of the fact that the Modification Exemption was in effect, since all of the Plaintiffs received only the H-8 Form.  (HSBC R Pl. SMF Par. 71-72); (Enc. R. Pl. SF 1); 12 C.F.R. § 226 Appx. H-8.  Plaintiffs argue that Tommie, Louise, and Jeffrey may have, in fact, preferred to have a limited rescission right if they decided that they would rather not rescind all of the mortgage.  However, based on the undisputed facts, it is clear that none of the Plaintiffs were ever notified that such might be an option.  The failure by Encore to provide Plaintiffs with adequate

notice of their precise rescission rights under TILA was a violation of Section 1635 and, as a consequence, we find that Plaintiffs' right to rescind the 2005 Loan was extended for a period of three years from the date of the closing of the 2005 Loan. 15 U.S.C. § 1635(a).

### C. Proper Notice of the Election to Rescind Against Encore and HSBC

Encore also raises the argument that, even if Encore's provision of the H-9 Form with respect to the 2004 Loan and its provision of the H-8 Form with respect to the 2005 Loan did constitute TILA violations which extended the statutory periods during which Plaintiffs had a right to elect to rescind the loans, Plaintiffs never properly elected to rescind either loan before bringing suit in the instant action. Regulation Z provides that "to exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). Furthermore, Regulation Z also provides creditors with 20 days from the date that the notice of a rescission is received to "return any money or property that has been given to anyone in connection with the transaction and [] take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2).

Plaintiffs tacitly admit that they never sent any form of written communication to any Defendant prior to bringing the instant action for rescission. (P R. Enc. SAF Par. 4). Plaintiffs instead argue that the actual filing of the instant action occurred

less than three years from the date of the closing of both the 2004 Loan and the 2005 Loan and that the filing of the instant action itself along with service of the complaint on Defendants was sufficient, pursuant to Regulation Z, to provide notice of Plaintiffs' intention to rescind the mortgage. Encore argues that Regulation Z implies that borrowers must present notice of their intention to rescind directly to the creditor and allow the creditor twenty days to respond before bringing suit.

The courts in this district are split on the precise issue of whether the filing and service of a lawsuit can satisfy TILA's requirement for notice of a borrower's intent to rescind a loan. Encore points out that at least one court in this district has held that filing a complaint is not sufficient to provide notice to creditors. *Jefferson v. Security Pacific Fin. Servs.*, 162 F.R.D. 123, 126 (N.D. Ill. 1995)(holding that a borrower must request rescission from a creditor before bringing suit). However, Plaintiffs point out that other courts in this district have reached the opposite conclusion, namely, that the filing and service of a federal complaint is sufficient under the language of TILA to provide creditors with notice of rescission. *See, e.g., Pulphus v. Sullivan*, 2003 WL 1964333, at *16 (N.D. Ill. 2003)(holding that the service of a federal complaint that demands rescission complies with TILA's requirements for providing notice to a creditor of a borrower's intent to rescind a loan); *Elliot v. ITT Corp.*, 764 F. Supp. 102, at *105-06 (N.D. Ill. 1991)(same).

We agree with Plaintiffs that the filing and service of a complaint is sufficient to satisfy TILA's notice requirements for electing a rescission, provided that the

complaint clearly states the borrower's intent to rescind and specifically names the party to whom the demand for rescission is addressed.  In reaching this conclusion we note that the language in Regulation Z setting forth the requirements for serving notice of rescission on a creditor is very broad.  12 C.F.R. § 226.15(a)(2). Regulation Z allows a borrower to effectuate notice of a rescission "by mail, telegram, or *other means of written communication.*"  *Id.* (emphasis added).  A complaint in a federal lawsuit that expressly demands rescission clearly falls into the category of a written communication.  When properly served on the parties to whom rescission is demanded within the proper statutory period, such a complaint satisfies the notice requirements as stated in Regulation Z.  *Id.*  This conclusion is consistent with the purpose of the notice requirement for rescission under TILA, which is to provide the creditor with valid notice that the borrower wishes to rescind the loan. We are not persuaded by Encore's argument that they did not receive proper notice since Plaintiffs' complaint in this case clearly provided notice of Plaintiffs' rescission of the 2004 Loan and the 2005 Loan in a timely manner.  There was nothing preventing Encore from complying with Plaintiffs' rescission demand within 20 days of the filing of the instant action which would have had the effect of mooting Plaintiffs' TILA claims against Encore.

In this case, as discussed above, the NORTC forms that were provided to the Original Borrowers with respect to both loans were insufficient to notify Plaintiffs of their respective rescission rights.  Thus, pursuant to TILA, Plaintiffs' rights to

exercise rescission on both loans were extended to three years from the respective dates of the closings on both loans. The docket in this case reflects that Plaintiffs served Encore with a copy of the complaint demanding rescission on June 26, 2007, which was less than three years from the dates of the closings on both loans. (Doc. No. 13). The docket also reflects that HSBC was served with a copy of the First Amended Complaint on October 9, 2007, which was less than three years from the date of the closing of the 2005 Loan (the only loan with which HSBC is implicated). (Doc. No. 64). As indicated above, the service of the complaint, which clearly indicated Plaintiffs' intention to effectuate rescission of both loans, constituted valid notice of Plaintiffs' intent to rescind both loans. Thus, the undisputed facts establish that Encore was under a legal obligation to comply with the procedures set out in Section 1635 and Regulation Z for effectuating rescission on both the 2004 Loan and the 2005 Loan. HSBC was also under a legal obligation to comply with the procedures set out in Section 1635 and Regulation Z for effectuating rescission on the 2005 Loan. Since neither Encore nor HSBC complied with Plaintiffs' rescission demands within 20 days of the date that notice of rescission was received, Encore and HSBC are also subject to damages under TILA. *See* 15 U.S.C. § 1640(a).

## II. BONY's Motion For Summary Judgment

BONY has also moved for summary judgment on Plaintiffs' TILA claims. BONY was the assignee of the 2004 Loan which was satisfied in full by the 2005

Loan.  (P R. BONY SF Par. 10); (BONY R. P. SF Par. 60).  Plaintiffs seek rescission of the 2004 Loan even though the loan was already paid off.  BONY does not challenge Plaintiffs' argument that they are free to seek rescission of the 2004 Loan. (P. SJ Mem. 15).  BONY, however, argues that the undisputed facts establish that BONY is not liable for rescission under TILA.


    A. Assignee Liability

       BONY argues in support of its motion for summary judgment that, pursuant to TILA, an assignee can only be held liable for rescission when the underlying TILA disclosure violation which extended the borrower's right to rescind the loan was apparent on the face of the loan documents available to the assignee.  Plaintiffs argue that the prevailing law indicates otherwise and that courts in this district have concluded that assignee liability does not require underlying TILA violations to be apparent on their face.  *See, e.g., Adams v. Nationscredit Fin. Servs. Corp.*, 351 F. Supp. 2d 829, 834 (N.D. Ill. 2004)(citing to 15 U.S.C. § 1641(c) as support for the fact that an assignee may be held liable for rescission notwithstanding a disclosure violation that is apparent on its face).  However, the legal issue debated by Plaintiffs and BONY is not pertinent to this action given that BONY has not pointed to undisputed facts that establish that the underlying disclosure violation was not apparent on its face.  BONY acknowledges that it received a loan file in connection with the 2004 Loan which included numerous documents in connection to the 2004

Loan. (BONY R. P. SAF Par. 26-28). Plaintiffs argue in their response to BONY's motion for summary judgment that BONY's loan file included a copy of the incorrect NORTC form which would have provided BONY with notice of the underlying violation. (P Ans. BONY Mot. SJ 12); 15 U.S.C. § 1641(a). BONY has not pointed to any evidence that would establish that it did not have access to such information. Therefore, even if BONY were correct in its legal argument that prevailing law only permits assignee liability to the extent that underlying TILA disclosure violations are apparent on their face, BONY has not shown that it is entitled to summary judgment for that reason.

### B. Insufficient Notice of Original Borrowers' Rescission Against BONY

BONY also argues that since it was not served with a complaint related to this action until December 4, 2007, which was more than three years from the date of the closing on the 2004 Loan, that the extended period in which the Plaintiffs could exercise their rescission rights against BONY had expired and that BONY cannot be held liable for rescission or for failing to rescind the 2004 Loan. Plaintiffs argue that a rescission demand was properly and timely asserted against BONY since, pursuant to TILA, notice of rescission is only required for the original creditor, and Plaintiffs' joining of BONY subsequent to the filing of the instant action relates back to the date that the action was originally filed and, thus, notice of Plaintiffs' intent to rescind the 2004 Loan was timely provided.

1. Notice Requirement for Assignees

Plaintiffs argue that, based on the language in TILA, they were only required to provide notice of rescission to the original creditor of the 2004 Loan and that such notice to the original creditor was sufficient to bind any subsequent assignees to the rescission demand, as well as to subject future assignees to statutory damages and attorney's fees for failing to rescind. Plaintiffs point to the fact that both Section 1635 and Regulation Z state that a borrower should notify the "creditor" to effectuate rescission. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(2). Plaintiffs rely on the fact that neither Section 1635 nor Regulation Z explicitly use the phrase "assignee" when describing the borrower's procedures for electing a rescission.

Plaintiffs' statutory argument is unpersuasive. Plaintiffs ignore the fact that TILA explicitly states that an assignee of a mortgage is "subject to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage. . . ." 15 U.S.C. § 1641(d)(1). Plaintiffs themselves argue that "assignees are subject to the rescission right *to the same extent as the original creditor.*" (P. Ans. 10)(emphasis in original). Notwithstanding the fact that TILA does not explicitly mention assignees in its rescission notice provisions (just as TILA does not explicitly mention assignees in other provisions where assignees are in fact implicated, including other rescission provisions), there is no indication from the language of TILA that assignees should not be entitled to the same rights to notice of rescission as original creditors.

Plaintiffs argue that public policy considerations favor binding assignees to rescission demands made on original creditors. Plaintiffs argue that ascertaining the identities of assignees can be difficult for borrowers since the given assignee of a particular loan is not always a matter of public record. Plaintiffs argue that requiring borrowers to identify assignees and to serve notice of rescission on such assignees within the three year statutory period would be unduly burdensome for borrowers. However, there is no indication that such a consideration was not before Congress and the FRB when the provisions of TILA and Regulation Z were drafted setting the extended period of three years in which to exercise rescission. Furthermore, as BONY notes, adopting Plaintiffs' interpretation of the notice requirement in TILA would have the absurd effect of subjecting to rescission and damages assignees that, in some cases, have absolutely no means of discovering that a rescission demand has been made. Plaintiffs have not pointed to persuasive authority indicating that this was a result intended by Congress. We also note that in the instant action there is no evidence in the record indicating that BONY had any notice of the instant action or of Plaintiffs' demand for rescission prior to the date that BONY was served with the second amended complaint. Therefore, we find that Plaintiffs could not effectuate notice of rescission to BONY simply by notifying Encore.

We finally note that Plaintiffs argue that this court has recently concluded in another case that notification to an original creditor is sufficient by itself to bind a subsequent assignee to a rescission demand. (P. Ans. 10). In *Lippner v. Deutsche*

*Bank Nat. Trust Co.*, 544 F. Supp. 2d 695 (N.D. Ill. 2008), this court did find that an assignee was liable for rescission under TILA. *Id.* at 705. However, in *Lippner*, the plaintiff's provision of notice of rescission to the assignee within the statutory period was not an issue. *Id.* That is because in *Lippner* the assignee defendant was accurately named and served with the original complaint demanding rescission less than three years after the date of the closing of the loan at issue in that case. (07 C 448 Doc. No. 7). Such, however, is not the case in the instant action.

2. Relation Back

Plaintiffs further argue that relation back principles can be applied to render Plaintiffs' notice of rescission to BONY timely. However, BONY points out that the three year extended right of rescission in Section 1635 has been interpreted by the Supreme Court to be a statute of repose and not a statute of limitations. *Beach v. Ocwen F.S.B.*, 523 U.S. 410, 417 (1998)(stating that the language in Section 1635(f) "talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation of the time for seeking a remedy superfluous"). BONY correctly notes that statutes of repose, unlike statutes of limitation, are not subject to equitable extensions. *See Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 887 (7th Cir. 2002)(stating that "equitable extensions are incompatible with periods of repose").

The court agrees with BONY that, since the statutory period, enumerated in

Section 1635, for borrowers to elect a rescission is a statute of repose, Plaintiffs may not rely on the relation back doctrine or on any other equitable extensions. Plaintiffs attempt to employ other arguments for why their notification of rescission to BONY should be considered timely, but ultimately Plaintiffs cannot escape the undisputed fact that they failed to serve any written notice on BONY of their intention to rescind the 2004 Loan within three years of the date of the closing on the 2004 Loan. (P R. BONY SF Par. 15). The straightforward language in Section 1635 mandates that a borrower provide such notice within the extended period of three years from the date of the closing on the loan in order to effectively compel a rescission. 15 U.S.C. § 1635(f). Since the undisputed facts establish that Plaintiffs failed to do so with respect to BONY, we find that BONY is entitled to summary judgment on the TILA claim which is the only claim in which BONY is named.

## CONCLUSION

Based on the foregoing analysis, we grant Plaintiffs' motion for partial summary judgment on Count I with respect to Encore and HSBC. We deny Plaintiffs' motion for partial summary judgment on Count I with respect to BONY. We also grant BONY's motion for summary judgment.


 

 

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   January 29, 2009